Bay Shore v. Kain

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2006

(Argued November 22, 2006                    Decided May 10, 2007)

Docket No. 06-0601-cv

------------------------------------------------

BAY SHORE UNION FREE SCHOOL DISTRICT,

Plaintiff-Counter-Defendant-Appellant,

v.

THOMAS KAIN, on behalf of his son, RYAN KAIN,

Defendant-Counterclaimant-Appellee.

------------------------------------------------

B e f o r e: MESKILL, WINTER and HALL, Circuit Judges.

Appeal from a final order and judgment of the United States District Court for the Eastern District of New York, Weinstein, J., filed on December 29, 2005, confirming the decision of the State Review Officer that Plaintiff-Appellant Bay Shore Union Free School District provide Ryan Kain, the son of Defendant-Appellee Thomas Kain, a one-to-one teacher's aide at his parochial school.

CHRISTOPHER VENATOR, Hauppauge, NY, (Ingerman Smith, L.L.P., Hauppauge, NY, of counsel),
for Appellant.

ROBERT E. FEKETE, Mineola, NY, (Kenneth A. Gray, Bee Ready Fishbein Hatter & Donovan, L.L.P., Mineola, NY, of counsel),

for <u>Appellee</u>.

MESKILL, <u>Circuit</u> <u>Judge</u>:

This appeal asks us to decide whether plaintiff-appellant Bay Shore Union Free School District (the School District) has a legal obligation to provide defendant-appellee's son Ryan with a teacher's aide during his classes at St. Patrick School,[1] the parochial school the child now attends. The New York Department of Education Review Officer determined that the School District must provide Ryan a teacher's aide at St. Patrick if his parents wish him to remain at that school for his regular classes. The School District challenged the decision in the United States District Court for the Eastern District of New York, and the court, Weinstein, <u>J</u>., confirmed the State Review Officer's findings and recommendation. However, the parties agree that the federal Individuals with Disabilities Education Act (IDEA) does not confer on Ryan a right to a teacher's aide at a private school of his choosing, and therefore the obligations of the School District turn on the New York Education Law. We conclude that the district court improperly assumed jurisdiction over this case. This appeal must be dismissed and the order of the district court vacated.

---

[1] Although the parties and the Impartial Hearing Officer refer to Ryan's school as "St. Patrick's," correspondence on the school letterhead included in the record indicates that the institution is called "St. Patrick School."

I.

At the time of his impartial hearing in September 2004, Ryan was a seven-year old second-grader at St. Patrick School (St. Patrick) in Bay Shore, New York. On November 4, 2003, one of Ryan's teachers referred him to the District's Committee on Special Education, observing that he "has extreme difficulty following and carrying out oral directions [and] has yet to master daily classroom routines." A pediatric neurologist diagnosed Ryan as suffering from Attention Deficit Hyperactivity Disorder (ADHD).

IDEA requires participating states such as New York to ensure that once a school district has made such a disability determination, the needs of the student are adequately accommodated. The "core of the statute . . . is the cooperative process that [IDEA] establishes between parents and schools." Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 53 (2005). For each disabled child a school district must create an "Individualized Education Program" (IEP), which "must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide." Id.; 20 U.S.C. § 1414(d)(1)(A). "If parents believe that an IEP is not appropriate, they may seek an administrative 'impartial due process hearing'" conducted by the state or local educational

agency. Schaffer, 546 U.S. at 53; 20 U.S.C. § 1415(f). If the impartial due process hearing is conducted by a local educational agency, as it was in the instant case, the decision may be appealed to the state agency. Id. § 1415(g). IDEA expressly provides that "any party aggrieved" by the final state decision "shall have the right to bring a civil action" challenging the decision "in any State court of competent jurisdiction or in a district court of the United States." Id. § 1415(i)(2)(A).

Pursuant to this elaborate process, the School District developed an IEP designating Ryan to receive testing accommodations, daily 40 minute sessions in a Resource Room, and the services of a one-to-one teacher's aide for three hours per day in the classroom. The IEP also indicated that Ryan should have the services of the one-to-one aide only at a public school within the School District. Ryan's parents requested an impartial due process hearing to challenge the IEP's determination that Ryan must travel to a public school every day to receive this benefit.

The Impartial Hearing Officer ruled that providing Ryan a one-to-one aide at St. Patrick was not only a reasonable accommodation for the School District, but was "necessary" for the boy to receive the Free Appropriate Public Education (FAPE) guaranteed by IDEA and the New York Education Law. See id. § 1412(a)(1)(A); N.Y. Educ. Law § 4402 (McKinney 2006). The

-4-

Hearing Officer concluded that requiring Ryan to travel from St. Patrick to a public school every day to enjoy the services of a one-to-one aide "would cause too much disruption in the child's school day and would take away from [his] academic experience." (citation and internal quotation marks omitted). Therefore, the Hearing Officer ordered the School District to "provide the child's [one-to-one] aide services indicated in his current IEP at St. Patrick's [sic]."

The School District appealed to the New York Education Department's State Review Officer (the Review Officer), contending that it has no obligation under federal or state law to provide a one-to-one aide to a student attending a private school. The Review Officer determined that IDEA did not confer on Ryan the right to enjoy all of the special services he would receive if he attended a public school. However, the Review Officer concluded, "[i]n contrast to the IDEA, New York State law does confer an individual entitlement to special education services and programs to eligible students enrolled by their parents in nonpublic schools." The Review Officer suggested that a one-to-one aide offered at a location separate from Ryan's academic classes would not meet the child's individual needs. The School District's appeal was accordingly dismissed.

The School District filed the instant suit in the United States District Court for Eastern District of New York,

challenging the Review Officer's determination that the School District is obliged to provide Ryan a one-to-one aide during his academic classes at St. Patrick.  The district court assumed jurisdiction was proper, stating that "IDEA provides for concurrent state and federal jurisdiction over claims arising under its provisions."  Bay Shore Union Free Sch. Dist. v. T. ex rel. R., 405 F.Supp.2d 230, 236 (E.D.N.Y. 2005).  The court acknowledged that federal law did not compel the School District to offer educational services to Ryan at St. Patrick, but rejected the School District's argument that New York law precludes it from doing so.  Id. at 249.  Thus, the court reasoned, it could not disturb the Review Officer's determination that anything less than provision of a one-to-one aide at the location of Ryan's academic classes at St. Patrick would fail to meet the child's academic needs.  Id. at 248.  The court confirmed dubitante the Review Officer's decision and this appeal followed.

II.

The parties concede that IDEA does not require the School District to provide Ryan with a one-to-one aide at St. Patrick.  Thus, at oral argument we questioned whether the district court properly exercised jurisdiction.  We ordered supplemental briefing.  Both parties now contend that this suit is properly before a federal court, but the parties' consent

alone cannot confer subject matter jurisdiction on the court. See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 238 (2d Cir. 2006). We are not persuaded by their argument that their dispute involves a federal question because IDEA incorporates the New York Educational Law on which this case turns.

IDEA frequently has been described as a model of "cooperative federalism." See Schaffer, 546 U.S. at 52. The statute requires participating states to establish a "basic floor of meaningful, beneficial educational opportunity," but states may exceed the federal floor and enact their own laws and regulations to guarantee a higher level of entitlement to disabled students. See D.D. ex rel. V.D. v. New York City Bd. of Educ., 480 F.3d 138, 139 (2d Cir. 2007), amending 465 F.3d 503, 514 n.13 (2d Cir. 2006); see also Burlington v. Dep't of Educ. for Comm. of Mass., 736 F.2d 773, 792 (1st Cir. 1984)(holding that "a state is free to exceed, both substantively and procedurally, the protection and services to be provided to its disabled children" under IDEA). The parties contend that IDEA's standard for a FAPE incorporates by reference all state standards, even if the state regulations exceed the minimum floor established by federal law. See id. at 789. Thus, even though Kain contends that New York law requires his son to receive a one-to-one aide at St. Patrick, the parties argue this is a

-7-

"civil action[] arising under the . . . laws . . . of the United States" such that federal question jurisdiction is appropriate. 28 § U.S.C. 1331. We disagree.

IDEA incorporates some but not all state law concerning special education. See Mrs. C. v. Wheaton, 916 F.2d 69, 73 (2d Cir. 1990). However, assuming that IDEA incorporates the relevant New York Education Law, this does not provide an independent federal question that would sustain the court's jurisdiction. A "federal statute is not a sufficient basis for federal question jurisdiction simply because it incorporates state law." City Nat'l Bank v. Edmisten, 681 F.2d 942, 945 (4th Cir. 1982). Edmisten was an action for a declaratory judgment brought by seven banks seeking to challenge North Carolina's application of its usury law to a credit card service fee the banks wished to introduce. Id. at 943. The court acknowledged that the National Bank Act, 12 U.S.C. § 85, expressly incorporated North Carolina's usury laws by allowing banks to charge rates up to the maximum permitted under state law. Id. at 944-45. Nonetheless, regardless of how North Carolina law was interpreted, the challenged practice would have remained legal under federal law, and thus the resolution of the dispute did not turn on a question of federal law. Id. at 945. The Edmisten Court concluded that the banks' action did not raise a federal question. Id. at 946; see also Standage Ventures v. Arizona, 499

F.2d 248, 250 (9th Cir. 1974) (deeming no federal question to exist where "the real substance of the controversy . . . turns entirely upon disputed questions of law and fact relating to compliance with state law, and not at all upon the meaning or effect of the federal statute itself").

A similar dynamic prevails in this action. The School District's suit does not turn on the interpretation of federal law. The parties agree that regardless of whether New York's Education Law permits the School District or Ryan's parents to dictate where the child will receive the services of a one-to-one aide, the IEP as drafted should afford Ryan the FAPE IDEA demands. This case turns entirely on a state-law issue, and as such it cannot form the basis of federal question jurisdiction.

III.

Nor does the IDEA's explicit authorization of a cause of action to be brought by "any party aggrieved by the findings and decision" of the state educational agency ipso facto raise a federal question that would confer jurisdiction in this case on a federal court. 20 U.S.C. § 1415(i)(2)(A).

The Supreme Court generally has followed Justice Holmes' classic formulation that, "A suit arises under the law that creates the cause of action." American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916). The Court has more recently explained that, "A case arises under federal law within

-9-

the meaning of § 1331 . . . if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Empire Healthchoice Assur. v. McVeigh, 126 S.Ct. 2121, 2131 (2006) (alterations, internal quotations, and citation omitted); Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 27-28 (1983).

However, the Supreme Court has recognized a narrow exception to Justice Holmes' formulation where a formally federal cause of action does not create ipso facto a federal question "because of the overwhelming predominance of state-law issues." Merrell Dow Pharms. v. Thompson, 478 U.S. 804, 814 n.12 (1986); see also Int'l Sci. & Tech. Inst. v. Inacom Commuc'ns, 106 F.3d 1146, 1154 (4th Cir. 1997). For example, in Shoshone Mining Co. v. Rutter, 177 U.S. 505 (1900), the Court considered a federal statute that expressly authorized "adverse suits" to determine title to land. Id. at 506. The statute provided that claims were to be determined by "local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States; or by the statute of limitations for mining claims of the State or Territory where the same may be situated." Id. at 508 (internal quotation marks omitted). The Court observed that the mere fact

that a suit "takes its origin in the laws of the United States" does not necessarily make it "one arising under the Constitution or laws of the United States," lest virtually every dispute over title to land "in the newer States" raise a federal question. Id. at 507. Thus, the Court held that the federal cause of action created by the mining statute did not confer federal question jurisdiction over claims that turned entirely on state law. Id. at 513.

We conclude that the Shoshone exception is appropriate in this case. We cannot discern a strong federal interest in adjudicating whether the School District must provide Ryan a one-to-one aide in the school of his choosing. Cf. Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 308, 315 (2005) (noting strong federal interest in prompt collection of delinquent taxes). IDEA provides a floor of entitlement to certain educational benefits, but the statute allows participating states to impose additional requirements on their schools if they so choose. See D.D., 480 F.3d at 139. Congress clearly did not intend to require a uniform level of special education entitlements across the states. The determination whether New York law compels the School District to provide the one-to-one aide at a parochial school is a question best left to New York courts.

IV.

We further conclude that IDEA's jurisdictional provision cannot save the parties' inability to establish federal question jurisdiction. The mining statute at issue in <u>Shoshone</u> differs from IDEA in one important respect. While the mining statute provided that "the adverse claimant should commence proceedings 'in a court of competent jurisdiction[,]' [i]t did not in express language prescribe either a Federal or a state court, and did not provide for exclusive or concurrent jurisdiction." <u>Shoshone</u>, 177 U.S. at 506. Thus, the <u>Shoshone</u> Court could discern no basis for jurisdiction absent a federal question. IDEA, however, expressly provides that

> any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

20 U.S.C. § 1415(i)(2)(A). The subsection to which this provision refers lays out in broad terms the procedures for challenging an impartial due process hearing. This jurisdictional language thus suggests that IDEA might provide an independent basis for subject matter jurisdiction of the federal courts whereby any issue raised in the hearing may be reviewed, even if it concerns exclusively a matter of state law.

We decline, however, to construe 20 U.S.C.

§ 1415(i)(2)(A) to permit an issue of state law to be challenged in federal court independent of a federal question. Such a broad reading of § 1415(i)(2)(A) might raise grave constitutional concerns about IDEA's jurisdictional provisions. Article III, Section 2 of the Constitution provides that the judicial power shall extend to nine different types of "Cases, in Law and Equity." Kain and the School District are both citizens of New York, and the judicial power does not extend to suits between citizens of the same state unless the case "aris[es] under this Constitution [or] the Laws of the United States," or involves several other now obscure scenarios, such as the adjudication of "Lands under Grants of different States," which are not implicated by the instant dispute. U.S. Const. Art. III, § 2, cl. 1. The broad reading of § 1415(i)(2)(A) that the parties advocate raises the question whether Congress has conferred or can confer jurisdiction on the federal courts beyond the judicial power described in Article III of the Constitution, and, if accepted, brings § 1415(i)(2)(A) into conflict with Article III, § 2.

The jurisdictional language of IDEA "must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." Rust v. Sullivan, 500 U.S. 173, 191 (1991) (quoting United States v. Jin Fuey Moy, 241 U.S. 394, 401 (1916)); see also Merrell Dow,

-13-

478 U.S. at 814 (recognizing "the need for careful judgments about the exercise of federal judicial power in an area of uncertain jurisdiction"). Therefore, we construe § 1415(i)(2)(A) more narrowly than has been urged by the parties. We hold that a federal court may not exercise jurisdiction over a civil action brought under § 1415(i)(2)(A) if the claims asserted turn exclusively on matters of state law and diversity of citizenship is absent. Because the School District has raised no federal question in this suit, jurisdiction under § 1415(i)(2)(A) cannot be sustained.

## V.

For the foregoing reasons, we conclude that the district court did not properly exercise jurisdiction over this action, and thus the appeal is dismissed and the decision below is vacated.